## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMANTHA CIANCI and MICHAEL CIANCI in their own right and as parents and natural guardians of a MINOR, | : : : : | |
| *Plaintiffs* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| PHOENIXVILLE AREA SCHOOL DISTRICT, et al., | : : | |
| *Defendants* | : | **No. 20-4749** |

## MEMORANDUM

PRATTER, J.                                                                 MARCH 18, 2022

Mr. and Mrs. Cianci ask the Court to impose a variety of sanctions on the school district and certain officials for the alleged spoliation of certain raw testing data and paper copies of test protocols from the school psychologist's evaluation of their daughter from when she was in the fourth grade. In particular, they challenge the administrative hearing officer's decision not to allow further discovery and to decline to draw an adverse inference against the defendants based on what the data might have shown. For the reasons that follow, the Court denies the motion for sanctions.

### BACKGROUND

As a brief overview, T.C. ("Student") was evaluated in the spring of her fourth-grade year for a learning disability. The school psychologist found that Student did present a neurologically based impairment (attention deficit hyperactivity disorder, known as "ADHD") that required a "Section 504 plan" to accommodate her needs. But, the psychologist also concluded that Student was able to stay on grade level without the additional step of special education classes. A year after the school psychologist issued this report, the COVID-19 pandemic began. Parents expressed frustration with the difficulties Student encountered with the COVID-19 prompted remote learning

1

environment.  In September 2020, Parents initiated this litigation in federal court alleging that the District's decision not to bring Student back for full-time in-person classes was negligent and discriminated against Student.  While this litigation was pending, Parents withdrew Student from the District to attend a private school.

The Court stayed the case to allow for a required administrative hearing.  During the administrative hearing, Parents learned that the school psychologist deleted certain raw testing data and paper records underlying her evaluation of Student when Student graduated from the fifth grade.  The administrative hearing officer did not find this issue relevant and, after issuing a subpoena of the testing company, denied Parents' requests for further investigation.  The hearing officer found that the District was not deliberately indifferent for purposes of Section 504 discrimination.  Nonetheless, Parents succeeded in securing private school tuition reimbursement for two years and a new educational evaluation based on the hearing officer's conclusion that the District did not promptly revise Student's Section 504 plan for the remote learning environment.

Parents have appealed the hearing officer's decision not to investigate the records deletion, which, they argue, relates to whether the District was deliberately indifferent for their discrimination claim.  Parents also filed the instant motion for sanctions based on the alleged records deletion.  The Court granted their request for an evidentiary hearing on the question of the current possible location of Student's test records.  Because it greatly assists in the appreciation of the context of the invocation of a demand for sanctions, the Court now sets forth this case's extensive history.

## A.  Factual Background

T.C. ("Student") attended elementary school in the Phoenixville Area School District from kindergarten through the spring of fifth grade.  Doc. No. 68-4, at 1, 3, 10.  After several years of

attending regular meetings with a school counselor and a social-skills group, in early 2019 she was referred to the school psychologist, Dr. Susan Clements, in the fourth grade for an evaluation to determine whether she had a disability that would require resources beyond the regular education curriculum. *Id.* at 4; Doc. No. 50-13, at 1. This evaluation included a range of qualitative and quantitative assessments, including speaking with parents and teachers, and conducting behavioral and cognitive tests. *See* Doc. No. 50-13, at 1–24. One of the behavioral tests was the Behavior Assessment System for Children, Third Edition ("BASC-3"), which collected responses from Student, Parents, and teachers regarding topics such as their perception of Student's self-esteem. *Id.* at 15; Doc. No. 50-8, Admin. Hrg. Tr. at 376:24–377:10.

Dr. Clements issued an Evaluation Report in May 2019. Doc. No. 50-13. As a result of her evaluation, Dr. Clements concluded that Student had a neurologically based impairment (ADHD/executive functioning), and that she should receive a Section 504 plan.[1] *Id.* at 19. However, Dr. Clements concluded that Student did not meet a separate criterion for specially designed instruction (because she was able to stay on grade level), so she was not eligible for special education classes. *Id.* Student was formally diagnosed with ADHD Combined Type and Generalized Anxiety Disorder by another psychologist in December 2019. Doc. No. 68-4, at 8.

In March 2020, the District shifted to online Zoom classes in response to the global COVID-19 pandemic. Parents expressed concerns about Student's ability to succeed in an online learning environment. In August 2020 and at various points thereafter, Parents requested that Student return to attend in-person classes. Doc. No. 50-3, at 9–10. Student's Section 504 plan

---

[1] A Section 504 plan is a plan developed under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, for a child who has a disability and is attending an elementary or secondary educational institution, in order to provide accommodations that will ensure her academic success and access to the learning environment. The Rehabilitation Act is broader in scope than the Individuals with Disabilities Education Act (IDEA). *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 234 (3d Cir. 2013).

was revised to accommodate the online learning environment by removing certain classes to allow greater flexibility and more breaks, and allowing the use of private chat features so that Student and her teachers could directly communicate. *Id.* at 10.  In March 2021, Parents unilaterally withdrew Student from the District to attend private school. *Id.*

**B. Procedural Background**

Parents initiated this litigation on September 28, 2020.  Doc. No. 1.  After the District filed a motion to dismiss, based, in part, on Parents' failure to exhaust administrative remedies, the Court placed the case in suspense pending administrative proceedings before the Pennsylvania Office for Dispute Resolution.  Doc. No. 18.

1. Office for Dispute Resolution Proceedings

The hearings spanned four days between June and August 2021.  The hearing officer heard testimony from eight witnesses, including Dr. Susan Clements (school psychologist), Kristin Borreggine (Plaintiffs' expert on child psychology), David Ramsey (District's Director of Specialized Programs and Services), and Robyn Spear (school principal).   Although Parents initially listed numerous school witnesses who worked with Student directly, including Student's teachers, Parents decided not to call these witnesses during the second day of the administrative hearings.  Doc. No. 50-3, at 11–12 & n.5.  Despite this decision not to call Student's teachers, the parties amassed an administrative record spanning over 2,500 pages.  Doc. Nos. 50-4–50-16.  The District also provided an "unprecedented level of document production" in the administrative hearings in response to Parents' supplemental requests.  Doc. No. 69, Hrg. Tr. at 81:13-14.

Dr. Clements testified on the first full day of witness testimony.  Doc. No. 50-8.  She testified that she no longer had copies of Student's paper test protocols because once a student leaves the elementary school, she shreds the papers.  Doc. No. 50-8, Admin. Hrg. Tr. at 391:10–

16.  Test protocols are the forms that parents, students, and teachers fill out in rating the student's behavior on a scale (e.g., rating between 1 (never) to 7 (always) for "I find it difficult to pay attention").  Doc. No. 69, Hrg. Tr. at 90:24–91:4.  Dr. Clements testified that she memorialized Student's test scores in an evaluation report and would "usually purge" both the paper and electronic versions of test protocols after the student leaves elementary school.  Doc. No. 50-8, Admin. Hrg. Tr. at 349:22–351:3; 390:15–391:16.  Then, Mr. Ramsey testified that "Dr. Clements complied with [the District's] administrative guidelines and [] practices in handling test protocols" in purging the files after memorializing the results in the evaluation report.  Doc. No. 50-7, Admin. Hrg. Tr. at 624:10–13.

In response to this testimony, Parents sought electronic discovery of Student's test protocols for the test results memorialized in Dr. Clements's report, particularly for any BASC-3 testing data stored in an electronic system called Q-Global.  *Id.* at 900:20–901:3.  The hearing officer directed the District to conduct this search.  *Id.* at 902:16–23; Doc. No. 50-11, at 260.  The District complied and reported back, through counsel, that the District's search of both systems revealed no records related to Student.  Doc. No. 50-11, at 259.  Parents alleged, without providing any additional information, that the District was "not being candid" about the location of the test data.  Doc. No. 50-11, at 280–81.  The hearing officer accepted the District's assertion that "it does not have anything in Q-Global related to the student."  Doc. No. 50-11, at 270, 231.

Unassuaged, Parents then sought to subpoena Pearson, the provider for Q-Global, and proposed an independent IT expert who could search the Q-Global metadata for deleted files.  They also sought an "adverse inference" against the District generally.  *Id.* at 257–58.  The District did not object to the request for the subpoena.  *Id.* at 259.  The hearing officer saw "little probative value in these matters," but provided the requested subpoena to Pearson for Student's Q-Global

5

file, *id.* at 263–69, 324–25. Pearson complied with the subpoena and reported that a search using

Student's name "found no records attributable to" Student. *Id.* at 324. The hearing officer declined

to hear from an IT expert or draw any adverse inferences. *Id.* at 257

Parents also sought the exclusion (from the administrative proceedings) of Dr. Clements's

Evaluation Report based on the deleted test protocols, sought summary judgment on this basis,

and continued to maintain their objection to not being allowed to deploy a forensics IT expert to

examine District files and records. *Id.* at 249. The hearing officer declined to exclude the

Evaluation Report and explained that summary judgment is not available in administrative

hearings. *Id.* at 248. After the conclusion of the hearing sessions, Parents then sought to reopen

the administrative record and continue the hearing to permit them to call former School Board

member, Lori Broker, who wished to talk about the District's alleged deletion of her emails. Doc.

No. 32-2, at 2. Parents alleged that, if the records were deleted after the end of Student's fifth

grade school year, "it is perjury and criminal." *Id.* The hearing officer denied this request for a

continuance. *Id.* at 1.

The hearing officer issued his decision on October 12, 2021. Doc. No. 50-3. In relevant

part, he found Dr. Clements's testimony credible and found that the District did not act with

deliberate indifference for purposes of a Section 504 discrimination claim. *Id.* at 12, 21. He noted

that there were some discrepancies in the test scores reported in the Evaluation Report, but found

"these flaws in the May 2019 [Evaluation Report] do[] not rise to the level to invalidate its

conclusion." *Id.* at 16. He also noted that Student's report cards supported the finding that Student

was able to stay on grade level without special education classes. *Id.* at 8.

However, notwithstanding the foregoing conclusions, the hearing officer did award two

years of compensatory education for the District's lack of revisions to Student's Section 504 plan

as online learning continued, as well as a District-funded Independent Educational Evaluation pursuant to 34 C.F.R. §300.502(d) (an "IIE") based on the discrepancies in the Evaluation Report. *Id.* at 21, 25.   His opinion did not directly address the deletion of Student's Q-Global test records.

2. Evidentiary Hearing

Before the hearing officer reached his decision, Parents filed a motion to lift the stay on this litigation concerning the District's use of Zoom learning and to conduct e-discovery for the Q-Global testing data, alleging that the BASC-3 records in Student's Q-Global file "may have been destroyed in anticipation of litigation." Doc. No. 25 ¶ 9.  Parents sought forensic examination of the District's servers or a deposition of Dr. Clements to again question her about the deletion. *Id.* ¶¶ 21, 22.  The District opposed the motion because the hearing officer's decision had not yet been issued.  Doc. No. 27.

After the hearing officer issued his decision, Parents asked the Court to reconsider their motion to lift the stay and permit discovery concerning the deleted Q-Global data, as well as to conduct an evidentiary hearing on this issue.  Doc. Nos. 32 & 45.  The District again opposed this motion.  Doc. No. 35. The Court ordered supplemental briefing on the manner of investigation that Parents sought into the record destruction allegations, which they provided.  Doc. Nos. 39 & 40.

The Court granted the motions in part, and to accommodate Parents, lifted the stay to allow discovery on the issue of the location of Student's test records, and scheduled an evidentiary hearing "on the issue of the status and location of [Student's] educational records."  Doc. Nos. 47 & 48.  The evidentiary hearing spanned 5.5 hours across two days.  The Court heard testimony from Ms. Broker, a current School Board member (Ayisha Sereni), Mr. Ramsey, and Parents' forensics investigator, Edward Ferrara.  Doc. Nos. 60 & 69.  Neither Parents nor the District called Dr. Clements to testify during the evidentiary hearing.

Mr. Ramsey testified that Student's test protocols (in Q-Global and paper form) were deleted pursuant to the District's pre-established records retention schedule in June 2020, at the conclusion of her fifth-grade school year. Doc. No. 69, Hrg. Tr. at 92:24–94:12.

### 3. Motion for Sanctions

After the evidentiary hearing, Parents filed a motion for sanctions based on the deletion of Student's "Test Protocols," defined broadly to include her Q-Global file, BASC-3 test materials, and other standardized tests noted in the Evaluation Report. Doc. No. 68, at 2–3. Parents allege that (1) the District's Notice regarding its destruction policy for special education records was not posted on the District's website until June 2021, *id.* at 1; and (2) that the destruction violated the Family Educational Rights and Privacy Act (FERPA), *id.* at 5.

Based on these allegations, Parents accuse the District of spoliation and they seek (1) a Rule 37(e) sanction in the form of "an express finding that the District, through its employees, acted with deliberate indifference in the destruction of [Student's] Test Protocols"; (2) a Rule 37(e)(2) sanction in the form of a finding of intent to deprive "thereby warranting a ruling against the District on all liability issues under the IDEA and Section 504"; (3) an order awarding costs, including expert witness costs and "legal fees paid to date to an outside law firm"; and (4) the Court to permit only the issue of damages to go to a jury. Doc. No. 68, at 7.

### LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Bistrian v. Levi*, 448 F. Supp. 3d 454, 464 (E.D. Pa. 2020) (internal quotation marks omitted). Federal Rule of Civil Procedure 37(e) sets out the standard for proving spoliation:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable

steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>> (C) dismiss the action or enter a default judgment.

"The party who seeks a spoliation sanction bears the burden of proving these factors" by a preponderance of the evidence. *Malibu Media, LLC v. Doe*, 82 F. Supp. 3d 650, 654 (E.D. Pa. 2015); *Jacobs v. City of Pittsburgh*, 143 F. Supp. 3d 307, 320 n.9 (W.D. Pa. 2015). "[I]n determining what sanction is appropriate, courts in the Third Circuit consider both the spoliating party's degree of fault and the adverse party's degree of prejudice, as well as whether any lesser sanction would adequately remedy the loss of evidence." *Bistrian*, 448 F. Supp. 3d at 467.

"An adverse negative inference is an extreme remedy." *McAdams v. United States*, 297 F. App'x 183, 187 (3d Cir. 2008). "No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 79 (3d Cir. 2012) (quoting *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)). To reach an adverse inference, the court must find that the spoliating party acted in bad faith. *Id.*

## DISCUSSION

This motion concerns both the deletion of Q-Global electronic data and shredding of physical paper test protocols. Rule 37(e) governs the deletion of electronic records. "Because the

Federal Rules of Civil Procedure do not address sanctions for spoliation of tangible items and other non-electronic information, however, the analysis established in the Third Circuit's spoliation precedent [before the promulgation of Rule 37(e)] still governs motions based on spoliation of non-electronic information." *Bistrian*, 448 F. Supp. at 464.  The Court will address the alleged spoliation of the Q-Global file and paper files in turn.

## I.    Electronic Testing Data

The Court finds that there is no credible evidence that the District destroyed the testing data during pending litigation or in reasonable anticipation of litigation, so there is no basis for a spoliation determination.  Even if there was a spoliation determination, there is no credible evidence of bad faith to justify the requested adverse inference here, and there is no basis for awarding costs and attorneys' fees.

### A.  Litigation Was Not Reasonably Foreseeable at the Time of Deletion

The District maintains that the deletion of Student's Q-Global raw testing protocol data took place at the end of her fifth grade year, in June 2020.  Doc. No. 69, Hrg. Tr. at 96:23-24.[2] This litigation commenced on September 28, 2020.  In June 2020, there was no litigation or pending right-to-know request that involved Student.  Doc. No. 69, Hrg. Tr. at 93:21-94:6. However, Parents argue that (1) litigation was reasonably foreseeable in June 2020 due to the pandemic and/or (2) the deletion did not really take place in June 2020 because the raw data either has not been deleted or the deletion took place at a later point.

---

[2]  The District asserts that it does not know the specific date within the month of June 2020.  Doc. No. 60, Hrg. Tr. at 47:22-49:25.  Parents did not question Dr. Clements about this.  *Id.*  There does not appear to be a basis on which a date of June 1 versus June 30 (or any date in between) would be relevant to this motion.

*1. Litigation Involving Student Was Not Reasonably Foreseeable in June 2020*

"When litigation is reasonably foreseeable is a question of fact, which is evaluated objectively." *Clientron Corp. v. Devon IT, Inc.*, 310 F.R.D. 262, 269 (E.D. Pa. 2015) (internal quotation marks omitted). Reasonable anticipation of litigation triggers the duty to preserve.

The Court first notes that this is a type of case that requires exhaustion of administrative proceedings. *See Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 275 (3d Cir. 2014). In cases requiring administrative exhaustion, the duty to preserve typically arises when the defendant receives notice of the administrative complaint, which would provide an earlier notice date than litigation. *See, e.g., Tabon v. Univ. of Pa. Health Sys.*, No. 10-cv-2781, 2012 WL 2953216, at *2 (E.D. Pa. July 20, 2012). Here, however, the typical analysis is not applicable. Parents instituted this federal court litigation *before* even beginning administrative proceedings. Upon agreement of the parties, the Court entered a stay so that the administrative proceedings could begin. As a result, the filing of the federal complaint on September 28, 2020 is the earliest date for spoliation consideration purposes.

Anticipation of litigation is a litigant-specific inquiry: the Court must determine whether the actors who deleted the information should have reasonably anticipated litigation from the party seeking the evidence. *See Archer v. York City Sch. Dist.*, 227 F. Supp. 3d 361, 380 (M.D. Pa. 2016), *aff'd*, 710 F. App'x 94 (3d Cir. 2017). In arguing that litigation was reasonably foreseeable in June 2020, Parents abstract the issue to a high level of generality. They argue that, due to the transition to remote learning in March 2020 as a result of the COVID-19 pandemic, the District should have reasonably anticipated litigation involving students whose impairments made remote learning difficult. So, Parents argue that any usual business practices involving deletion of data for students with Section 504 plans should have been suspended by June 2020.

However, a broad level of generality covering a host of matters, concerns and risks, based on a new disruptive event such as the COVID-19 pandemic is not appropriate for a spoliation inquiry. Under Parents' argument, the District's duty to preserve would have been triggered for all students evaluated for a disability in the normal course of Dr. Clements's work as a school psychologist in the spring of 2020, just as the eve of COVID-19 was upon the world. Such universal events, without more, do not put defendants on notice of litigation involving particular plaintiffs.

For example, in *Archer v. York City Sch. Dist.*, 227 F. Supp. 3d 361 (M.D. Pa. 2016), *aff'd* 710 F. App'x 94, 100 (3d Cir. 2017), a school district denied a charter school's request to renew its charter, and around the same time, an Assistant Superintendent departed the school district. *Id.* at 379. The spoliation dispute concerned the school district's deletion of the Assistant Superintendent's email account 90 days after his departure, pursuant to its record retention policy. *Id.* at 379. A group of students and parents who brought suit against the school district "nearly 11 months" later argued that "the disruption of 700–800 children" who would need to find new schools as a result of the charter denial meant that litigation should have been reasonably foreseeable when the school district deleted the email account. *Id.* at 380. The *Archer* court rejected this interpretation of reasonable anticipation, explaining that "Plaintiffs' argument that by the simple act of doing their jobs, Defendants should have been on notice of litigation that would not commence until nearly a full year later does not create knowledge that litigation is 'pending or probable.'" *Id.* at 380. The Third Circuit Court of Appeals affirmed on the merits. *Archer*, 710 F. App'x at 100.

Here, as in *Archer*, Dr. Clements was simply doing her job as the school psychologist in evaluating Student and then routinely deleting underlying records after the student's graduation

from elementary school.  The District did not receive notice of litigation involving Parents and Student until several months after the June 2020 deletion at the earliest (regardless of a separate dispute involving service of process).  Ironically, Parents themselves have taken the position that they understood the need for remote learning in the spring of 2020, and did not take issue with the District's use of remote learning until it was continued for the next school year in August 2020. Doc. No. 1 ¶ 11; Doc. No. 50-5, at 5; Doc. No. 50-9, Admin. Hrg. Tr. at 41:12–42:20.  The COVID-19 pandemic does not create an inference that the District anticipated or should have reasonably anticipated litigation regarding Student in June 2020.

Mr. Ramsey, who coordinated both the District's record retention policy for student records generally and Student's document production in this case, testified under oath that he was not aware of any potential litigation involving Student in June 2020.  Doc. No. 69, Hrg. Tr. at 93:24-94:1. The Court finds Mr. Ramsey's testimony credible. *See Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 137 (3d Cir. 2009) (determining credibility of witnesses at an evidentiary hearing for sanctions is the province of the district court judge).  Therefore, Parents have not demonstrated that this litigation was reasonably foreseeable in June 2020.

*2.  There is No Credible Evidence to Contradict the June 2020 Deletion Date*

Next, Parents argue that the District is misrepresenting whether and when the test protocol data were deleted.  To support this theory, Parents submitted an affidavit from Lori Broker (a former School Board member), and called both Ms. Broker and a current School Board Member, Ayisha Sereni, to testify at the evidentiary hearing.  Ms. Broker and Ms. Sereni described what they called a School Board scheme to underfund special education programs, reportedly pointing to an ongoing federal criminal investigation of a former school official involving embezzlement

of sports funding. *See, e.g.*, Doc. No. 45-1, Broker Decl. ¶¶ 28-29; Doc. No. 60, Hrg. Tr. at 9:5-9:13, 12:18-13:1; *United States v. Gehris*, 21-cr-458 (E.D. Pa.).

When asked about destruction of special education records, Dr. Sereni broadly testified that she had personal knowledge of "everything from broadcasts, board meetings as a result of an internal policy to e-mail deletions and suspicious behaviors that were reported to the Secret Service and other federal investigators," Doc. No. 60, Hrg. Tr. at 14:12-14:20, but that she had no personal knowledge regarding Student's records, *id.* at 130:5-11. Ms. Broker also testified that she had no personal knowledge regarding intentional destruction of educational records because "the Board was kept in the dark." *Id.* at 135:5-14. The Court finds that neither witness offered relevant evidence to suggest that Student's electronic test records were deleted in anticipation of litigation.

Alternatively, Parents have argued that Student's electronic test protocol records were not actually deleted and the District is hiding them. *Id.* at 25:12-26:3. They also argue that there should be back-ups to allow the recovery of the electronic data. Doc. No. 25 ¶ 20. Logically, such non-destruction would not provide a basis for a spoliation claim. And, in any case, Parents have not introduced any evidence to counter Dr. Clements's credible testimony that she deleted the Q-Global testing protocol data pursuant to the District's standard practice.

Lastly, Parents argue that the District's resistance to allowing Parents' IT forensics expert (or a court-appointed one) to analyze their electronic systems to determine whether the electronic data is recoverable suggests that the records were not destroyed in June 2020, but rather, at some later time closer to pending litigation. This request appears based on the fact that Parents "do not trust the evaluation report" based on the raw data. *Id.* ¶ 25. But this Court must remain mindful that "[c]ourts should guard against undue intrusiveness resulting from inspecting or testing such systems." Fed. R. Civ. P. 34 committee's notes to 2006 amendment. Based only on their suspicions

14

and lack of trust generally, Parents seek wide-ranging access to District records systems without any consideration of the confidentiality and privacy concerns of other students in the District.

Moreover, Parents have not established that such a wide-ranging form of investigation is even relevant to their lawsuit, which concerns whether the District accurately assessed Student for special education services. As the hearing officer noted, Dr. Clements's evaluation report *did* find that Student faced a learning impairment and that she needed a Section 504 plan under the Rehabilitation Act to accommodate these challenges. Doc. No. 50-13, at 19. In finding that Student was able to stay on grade level without separate special education classes under IDEA, Dr. Clements relied on a variety of sources, including Student's report cards. Parents' own psychological expert, Dr. Borreggine, testified that a "report card is the most objective element of academic performance in a school district." Doc. No. 50-7, Admin. Hrg. Tr. at 566:17–19. Student's report cards were included in the administrative record and supported the Evaluation Report's findings. The hearing officer found that the minor discrepancies in the self-reported behavioral testing scores did not call into question Dr. Clements's conclusions regarding Student's learning impairment. Doc. No. 50-3, at 16.

In sum, there is no basis on which to conclude that the District reasonably anticipated litigation when Dr. Clements deleted Student's Q-Global raw data after Student left elementary school. Therefore, the Court finds that the District's deletion of the electronic test data does not constitute spoliation.

**B. There is No Credible Evidence of Bad Faith for an Adverse Inference**

Even if spoliation had occurred, Parents have not met their burden to demonstrate bad faith on the part of Dr. Clements or the District for purposes of an adverse inference. *See Bull*, 665 F.3d

at 79. The primary remedy sought by Parents—an adverse inference—is an extreme remedy. *McAdams*, 297 F. App'x at 187.

Although Parents listed Dr. Clements as a proposed witness for the evidentiary hearing, Doc. No. 60, Hrg. Tr. at 6:23, they did not call Dr. Clements to testify at the hearing, *id.* at 49:21-24, or ask the Court to compel her attendance (if needed). As a result, the only testimony by the person who deleted the records at issue in this sanctions motion is the testimony contained in the administrative hearing record. The hearing officer found Dr. Clements's testimony credible. Parents have introduced no evidence contradicting her testimony or showing bad faith.

Further, Dr. Clements's testimony is consistent with the District's policy. Dr. Clements memorialized the results of her evaluation in the Evaluation Report and found that Student did present factors for ADHD, a finding confirmed several months later by an outside psychologist. Dr. Clements explained that she deletes the raw data when students are no longer in the elementary school building. This explanation is consistent with the District's record retention policy. Regardless of Parents' criticisms of this general policy,[3] the Court finds that there is no basis for a finding of bad faith in following the policy. Thus, even if there was spoliation (which there was not), the Court would deny an adverse inference because there is no evidence of bad faith.

## II.   Paper Test Protocols

Unlike electronic data, the spoliation of paper documents is unaffected by the promulgation of Rule 37(e). Spoliation of physical evidence "occurs where[] the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual

---

[3] As part of Parents' criticism of the records retention policy under FERPA, they argue that the form of notice the District provides regarding student records deletion (a letter available on the District's website) was not uploaded to the website until June 30, 2021. Doc. No. 69, Hrg. Tr. at 98:9–13. According to Parents, this suggests a scheme to justify deletion as a sort of cover-up. But Mr. Ramsey testified under oath that this PDF file was simply moved to another page on the website and that the letter is routinely provided to parents as part of seeking permission to evaluate their student. *Id.* at 98:16–20, 99:11–20. Regardless, the issue of whether the notice-of-deletion letter was properly provided to parents for FERPA purposes is not relevant to this sanctions motion.

suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull*, 665 F.3d at 73. Spoliation of paper evidence is not an issue "where the destruction was a matter of routine with no fraudulent intent." *Brewer*, 72 F.3d at 334. "Thus, whereas some lesser sanctions may be warranted under Rule 37(e) for the unintentional but prejudicial loss of ESI, conduct that is no worse than negligent is not spoliation where non-electronic evidence is concerned." *Bistrian*, 448 F. Supp. 3d at 466 (internal quotation marks omitted). In order to prove spoliation of physical evidence, the movant must show bad faith.

Dr. Clements testified that she shreds paper files when students leave elementary school in the same manner as deletion of raw electronic data. Doc. No. 50-8, Admin. Hrg. Tr. at 390:22–391:16. Her supervisor, Mr. Ramsey, was the District's records retention officer for educational records and confirmed this routine practice in his testimony during the evidentiary hearing.[4] Doc. No. 69, Hrg. Tr. at 86:6–10, 91:16–92:1. The Court finds Mr. Ramsey's testimony credible. For the same reasons discussed above, there is no relevant evidence that the District acted in bad faith.

Furthermore, the test protocols would have low probative value in this litigation because they are simply the papers on which Student, Parents, and teachers (who were not called to testify in the administrative hearings) filled out responses about their perspectives on Student's behavior, which were also summarized in the Evaluation Report separately from the quantitative scores. Parents also had access to the report cards, as well as an extensive document production. Therefore, the Court declines to issue a finding of spoliation of the test protocol papers.

---

[4] Parents dispute the validity of the records retention policy that allowed this practice, arguing that it violates the Family Educational Rights and Privacy Act (FERPA). However, even if this was the case, "an independent duty to preserve arising from a statute, regulation, or other source does not necessarily prove that a party also had a duty to preserve in anticipation of litigation" because "the common-law duty to preserve is based on the foreseeability of litigation, while other duties to preserve may be addressed to any number of logically separate concerns." *Bistrian*, 448 F. Supp. 3d at 472. Assuming *arguendo* that a willful violation of a statute such as FERPA could also suggest intent to deprive in anticipation of litigation, the "bad faith" discussion above already takes this argument into account.

## III.    Other Relief Sought Is Not Warranted

Parents also seek access to the District's systems for an IT forensics investigation by their preferred person or a court-appointed investigator, and costs and attorneys' fees associated with this motion. Because there is not a finding of spoliation, the Court need not reach these requested remedies. Nevertheless, for the sake of completeness, the Court will briefly address these requests.

Even if there was a finding of spoliation (which there is not), the Court would fashion sanctions based on "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (internal quotation marks omitted). For the reasons discussed above, an IT forensics investigation such as proposed by Parents would be not only unwarranted and unhelpful to the issues before the Court, but also unfair to the District and raise serious confidentiality concerns involving other students' data.

Parents also seek costs related to retention of their proffered IT expert, Edward Ferrara. Even if Parents prevailed, the remedy under IDEA for parents "without an expert with the firepower to match the opposition" who feel that educational testing was conducted inappropriately is the award of an Independent Educational Evaluation. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 61 (2005).[5] The hearing officer in this case has already ordered that remedy.

---

[5] Expert fees are not a form of recoverable costs in IDEA litigation, *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 300 (2006), but courts in this circuit have sometimes allowed expert fees for parallel Section 504 litigation, *see, e.g.*, *E.H. v. Wissahickon Sch. Dist.*, No. 19-cv-5445, 2020 WL 6286709, at *12 (E.D. Pa. Oct. 27, 2020). Parents have shifted the statutory bases for their claims across amended complaints and have made no argument that the portions of the amended complaints alleging violations aside from the testing conducted to determine whether Student qualified for special education classes under the IDEA justify expert fees.

*See* Doc. No. 50-3, at 25.

Lastly, Parents seek attorneys' fees.  But Student's father has proceeded as an attorney representing himself, his wife, and Student throughout these proceedings.  Doc. No. 60, Hrg. Tr. at 1, 2:8–9.  A self-represented party who is an attorney cannot recover an attorney's fee.[6]  *Kay v. Ehrler*, 499 U.S. 432, 438 (1991).  Therefore, the relief sought by Parents would not be available even if the Court found that spoliation took place.

## CONCLUSION

For the foregoing reasons, the Court denies Parents' motion for sanctions.  An appropriate order follows.

BY THE COURT:

GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[6] In the motion for sanctions, Parents also seek "legal fees paid to date to an outside law firm." Doc. No. 68, at 7.  But no attorney besides Mr. Cianci has entered his appearance in this case for the plaintiffs and the plaintiffs have not previously disclosed an outside law firm's involvement.  To the extent Parents have relied on undisclosed legal advice, the Court refers them to its Pretrial and Trial Procedures:

> *Pro se* litigants who are not being formally represented by lawyers, but have received substantive assistance . . . from an attorney for any material filed with the Court shall, in the filed material, identify the attorney, the attorney's contribution to the filing, and the scope of the attorney's limited representation or other assistance.  Failure to identify any such attorney (*i.e.*, any attorney who is a "ghostwriter" for the *pro se* litigant) will amount to a representation by the *pro se* litigant that the submission is the *pro se* litigant's submission without any substantive assistance from an attorney.

Judge Gene E. K. Pratter's General Pretrial & Trial Procedures, at 10–11, https://www.paed.uscourts.gov/documents/procedures/prapol2.pdf (Mar. 2022).